JUDGE CEDARBAUM

07 CV 3925

Peter L. Altieri, Esq. (PL 0056)
Robert D. Goldstein, Esq. (RG 8037)
Attorney for Plaintiffs
250 Park Avenue
New York, New York 10177
(212) 351-4500

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

KENNETH COLE PRODUCTIONS, INC. and
JEFFREY TODD JACKSON,

                    Plaintiffs,

- against -

PERRY ELLIS INTERNATIONAL, INC.,

                    Defendant.

------------------------------------- x

MAY 18 2007

COMPLAINT

Case No. _____

JURY TRIAL DEMANDED
AS TO ALL COUNTS
TRIABLE BY JURY

Plaintiffs Kenneth Cole Productions, Inc. ("KCP") and Jeffrey Todd Jackson, by their attorneys Epstein, Becker & Green, P.C., for their complaint, allege as follows:

### THE PARTIES

1.     Plaintiff KCP is a New York corporation with its principal place of business located at 603 West 50th Street, New York, New York.

2.     Plaintiff Jeffrey Todd Jackson ("Jackson") is an individual who, at all times relevant hereto, has resided in New York and Connecticut.

3.     Defendant Perry Ellis International, Inc. ("Perry Ellis") is, upon information and belief, a Florida corporation with its principal place of business in the State of Florida and with corporate offices located at 1114 Avenue of Americas, New York, New York.

NY:1832620v1

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 in that the value of the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. In addition, plaintiffs are citizens of the State of New York and defendant is a citizen of the State of Florida and the Court therefore has complete diversity jurisdiction.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) and 1391(c), because the acts and omissions complained of herein occurred in this District and because, at all times material and relevant, defendant transacted business in this District.

## FACTUAL BACKGROUND

6. Jackson has been employed in the apparel sales industry for the past 18 years, and his experience working in the area of men's and children's apparel in particular dates back 18 years.

7. On or about November 10, 2003, Jackson became employed by Perry Ellis as Senior Vice President of Sales & Marketing for Perry Ellis Menswear.

8. At all times during Jackson's employment with Perry Ellis, Jackson resided in New York and performed all his duties and responsibilities as a Perry Ellis employee in New York. Indeed, throughout his employment with Perry Ellis, Jackson did not work in Florida more than a few days per year.

9. As a condition of his employment with Perry Ellis, Jackson was required to execute a Confidentiality, Non-solicitation and Non-competition Agreement (the "Agreement") dated as of November 11, 2003. Jackson executed that Agreement in New York and performed all his obligations under the Agreement in New York.

10. Section 2 of the Agreement contains a confidentiality provision that provides as follows:

> Non-Disclosure of Confidential Information. I acknowledge that, in the course of my employment by Perry Ellis, I will become privy to confidential and/or proprietary information regarding, but not limited to, the Company's methods of doing business, the name and address of its customers and suppliers, prices charged to and paid by the Company, technical memoranda, market and/or design research reports, comparative analysis of competitive products and services, distribution networks and contacts, licensing agreements, marketing strategies and sales techniques, credit policies, manufacturing and operation procedures, product designs, acquisition strategies, and other information now existing or later acquired regardless of whether any such information qualifies as a "trade secret" under the applicable federal or state law. I understand and acknowledge that the secrecy of this confidential information gives the Company a significant competitive advantage in the importation and marketing of its products. I agree not to discuss, use, or cause or aid in the disclosure or use of any confidential information as described above at any time for whatever reason except as required by law or in the normal course of my duties and solely for the benefit of the Company, at any time during my employment by the Company or after the termination of my employment by the Company for any reason.

11. Section 3 of the Agreement contains a non-solicitation of employees provision that provides as follows:

> Non-Solicitation of Company Employees. I promise that, during the term of my employment by the Company and for a period of two (2) years after the termination of my employment with the Company, that I will not hire, solicit for hire, or encourage any other person or entity to solicit or hire, any Employee of the Company to work as an employee, consultant, independent contractor, officer, or in any other capacity for myself or for any third party. For the purpose of this paragraph 3, the term "Employee" shall include any person that was employed by the Company during any part of the six (6) month period immediately preceding the termination of my employment with the Company.

12. Section 4 of the Agreement contains a non-solicitation of vendors, clients and customers provision that provides as follows:

> Non-Solicitation of Vendors, Clients and Customers. During the period of my employment and for a period of two years after termination of my employment with the Company for any reason, I promise that I will not, on my own behalf or on behalf of any person, firm or corporation, or business entity, (i) solicit any persons or business entities with which the Company has/had a business relationship or is/was negotiating contracts regarding products or services during the term of Employee's employment, or (ii) induce, suggest, persuade or recommend to any such persons or entities that they terminate, alter or refrain from renewing or extending, their relationship with the Company or become a client of mine or a client of any third party, and I promise that I will no induce or permit any other person to approach any such person or entity for any such purpose.

13. In addition to the various post-employment restrictions described above, the Agreement also purports to restrict Jackson's right, for a period of two years following the termination of his employment with Perry Ellis, to accept employment in any capacity with any licensor, designer and/or marketer of men's or women's clothing in any geographic area where Perry Ellis does business. Specifically, section 5 of the Agreement provides as follows:

> Non-Competition. I acknowledge that my employment with the Company will enable me to obtain knowledge in the apparel industry, marketing and licensing and other fields in which the Company does business, and will also enable me to form certain relationships with individuals and entities in the geographic areas in which the Company furnishes its products and services. I further acknowledge that the goodwill and other proprietary interests of the Company will suffer irreparable and continuing damage in the event that I enter into competition with the Company during my employment or within two years subsequent to the termination of my employment for any reason. Therefore, I agree that, during the term of my employment and for a period of two years after the termination of my employment, regardless of the cause of the termination of my employment, I will not, without prior written consent of the President of Perry Ellis, compete with the Company in any geographic area where the Company does business. More specifically, I agree that I will not work as an officer, employee, independent contractor, consultant, or in any other capacity whatsoever, for any entity that is a licensor, designer and/or marketer of men's and/or women's clothing, specifically including but not limited to sport and dress shirts, golf sports-wear, swimwear, sweaters, casual and dress pants, and/or shorts, in any

geographic region where the Company markets and/or distributes its products.

14. On or about April 26, 2007, Jackson tendered his resignation to Perry Ellis. Perry Ellis released him from his employment effective immediately.

15. Jackson subsequently accepted employment with KCP as Division President of Kenneth Cole Menswear. In his capacity as a KCP employee, Jackson will continue to remain a New York resident and perform his duties and responsibilities to KCP in New York.

16. Following Jackson's resignation from Perry Ellis, by letter dated April 27, 2007, Perry Ellis notified both Jackson and KCP that it intends to enforce against them the terms of the Agreement, including the non-competition provisions set forth in paragraph 5. As written, section 5 of the Agreement purports to prohibit Jackson from accepting employment with KCP.

17. The provisions of paragraph 5 of the Agreement, however, are anti-competitive, overbroad and unenforceable because they do not serve to protect any legitimate business interest Perry Ellis has or may have. Instead, the provisions of paragraph 5 serve only to impair free and fair competition, unreasonably restrict Jackson's right to pursue his livelihood and prevent KCP from employing an employee of its choice.

18. Moreover, the non-competition provision is not reasonably necessary to protect any of Perry Ellis' legitimate business interests because Perry Ellis and KCP are not direct competitors within the same markets. To the contrary, KCP sells contemporary clothing whereas Perry Ellis sells neo-traditional clothing. In fact, KCP's principal customer base is significantly different from that of Perry Ellis.

19. In addition, the Agreement does not provide for the payment of any compensation to Jackson during the two year non-competition period set forth in paragraph 5. Thus, the non-competition provision is further rendered unreasonable by purporting to prevent

Jackson from working in an area in which he has nearly 20 years of professional experience without providing for any payment of compensation.

20. Despite the absence of a legitimate business reason to justify the non-competition provisions in section 5 of the Agreement, Perry Ellis nevertheless has threatened both Jackson and KCP with enforcement of that provision.

21. As a result of the foregoing, a present and justiciable controversy exists between the plaintiffs and the defendants regarding the enforceability of section 5 of the Agreement, KCP's legal right to employ Jackson in New York and Jackson's right to accept employment with KCP in New York.

22. In the absence of a judicial declaration of the respective rights and obligations of the parties, plaintiffs will suffer irreparable harm that cannot be fully remedied by money damages alone.

23. In addition, the subject of this action involves the right of a New York resident to pursue employment in the State of New York for a New York employer that is not bound by any provision of the Agreement. Perry Ellis' attempt to enforce the Agreement is directly contrary to New York's strong public policy against overbroad non-competition agreements and would have a substantial, detrimental impact on free and fair competition in New York. Under these circumstances, the enforceability of section 5 of the Agreement should be determined by a New York Court under New York law, notwithstanding any provision to the contrary set forth in the Agreement.

<u>AS AND FOR PLAINTIFFS' FIRST CAUSE OF ACTION</u>
(Declaratory Judgment)

24. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 23 as if fully set for herein.

25. A dispute exists between plaintiffs and defendant regarding the validity and enforceability of the non-competition provisions of the Agreement.

26. Jackson requires a judicial resolution of the present dispute between the parties in order to ensure that his commencement of employment with KCP does not constitute a breach of the Agreement, as Perry Ellis contends.

27. KCP similarly requires a judicial resolution of the present dispute between the parties to ensure that its employment of Jackson does not interfere with any lawful contractual rights asserted by Perry Ellis.

28. Absent a judicial declaration of the respective rights and obligations of plaintiffs and defendant, plaintiffs will suffer immediate and irreparable harm. Accordingly, plaintiffs are entitled to a declaratory judgment that section 5 of the Agreement is overbroad and unenforceable.

## AS AND FOR KCP'S SECOND CAUSE OF ACTION
(Unfair Competition)

29. Plaintiff KCP repeats and realleges the allegations set forth in paragraphs 1 through 28 as if fully set for herein.

30. The non-competition provisions set forth in paragraph 5 of the Agreement are overbroad and unenforceable in that they are not reasonably necessary to protect Perry Ellis' legitimate business interests.

31. Perry Ellis knows or should know that the non-competition provisions set forth in paragraph 5 of the Agreement are unenforceable.

32. By threatening KCP with enforcement of an overbroad non-competition provision, Perry Ellis has engaged in unfair competition by attempting to intimidate KCP from hiring an employee of its choice.

33. As a direct and proximate result of Perry Ellis' act of unfair competition, KCP has suffered damages in an amount to be determined at trial.

34. In addition, Perry Ellis' acts of unfair competition have caused and will continue to cause KCP to suffer irreparable harm that cannot be remedied by money damages alone.

WHEREFORE, plaintiffs respectfully demand the following relief:

(a) That this Court adjudge and declare that the aforesaid non-competition provision contained in section 5 of Perry Ellis' Agreement is void and unenforceable in its entirety;

(b) That this Court award plaintiffs monetary damages in an amount to be proved at trial;

(c) That this Court permanently enjoin and restrain Perry Ellis from directly or indirectly enforcing any portion of the non-competition provision contained in section 5 of Perry Ellis' Agreement; and

(d) That this Court grant plaintiffs such other and further relief as the Court may deem just or appropriate.

## Jury Demand

Plaintiffs demands a jury trial on all claims alleged herein that are triable by a jury.

Dated: New York, New York
       May 18, 2006

EPSTEIN BECKER & GREEN, P.C.

By: */s/ Robert D. Goldstein*
Peter L. Altieri (PL 0056)
Robert D. Goldstein (RG 8037)
Attorneys for Plaintiffs
250 Park Avenue
New York, New York 10177
(212) 351-4500